ABBIE A. ABRAHAM *v.* S. E. ONORATO GARAGES,
A CALIFORNIA CORPORATION DOING BUSINESS IN
THE STATE OF HAWAII AS MARKS CENTER PARKING,
AKA S. E. ONORATO GARAGES, EVERETT C. McCOY;
AND JAMES R. ANDERSON.

No. 4749.

NOVEMBER 6, 1968.

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE
DOI ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY LEVINSON, J.

The plaintiff-appellant brought this action for damages alleged to have resulted from injuries sustained by her while she was a passenger in a Mustang automobile driven by one Everett McCoy during the early morning hours of December 18, 1964. McCoy had taken the vehicle from the Marks Center Garage in Honolulu, of which he was manager, and he did so without permission from the owner of the Mustang (hereinafter Owner), who had stored the car there, and without authority from his employer, defendant-appellant S. E. Onorato Garages (hereinafter Onorato).

McCoy was first employed by Onorato on July 13, 1961, as a parking attendant for St. Mary's Square Garage in San Francisco. At the time his employment commenced, Onorato learned that McCoy had a valid driver's license, that he was well recommended by his last employer, and that he was bondable under the blanket insurance policy issued to Onorato. Unknown to Onorato, McCoy had a record of criminal convictions as follows: joyriding as a juvenile seventeen years earlier; assault and battery four years earlier; and the hit and run of a parked vehicle nine months earlier. On March 4, 1963 McCoy was promoted to the position of night manager of the Portsmouth Square Garage in San Francisco. After performing well in that position for approximately nineteen months, he was transferred to Honolulu on October 12, 1964 to become the manager of the Marks Center Garage.

During his period of employment with Onorato and up to the time of his transfer to Honolulu, McCoy's driver's license had been suspended at various times, primarily for failure to present proof of financial responsibility to the proper authorities as required by the California law. Shortly before his transfer to Honolulu, he was convicted for driving while his license was suspended, with the result that his license was suspended for an additional six months. There is some evidence that Onorato knew that McCoy was without a valid license at the time of his transfer, although there is no evidence that Onorato knew that the license had been suspended as opposed to a mere lapsing. As soon as McCoy arrived in Honolulu, he applied for and secured an Hawaiian license, apparently without informing the Hawaii authorities that his California license was suspended, contrary to the requirements of R.L.H. 1955, § 160-38. There is no evidence to indicate that Onorato knew that the Hawaii law had not been complied with.

About a month after McCoy arrived on the job, a garage customer (the Owner) delivered a 1965 Mustang for storage. The plaintiff testified that during the period from then until the time of the accident, she saw McCoy driving the Mustang on at least six different occasions, one of which apparently involved a short drag race. McCoy admitted driving the Mustang at least two times prior to the accident. Although McCoy was authorized to drive cars for repairs or polishing when the customer required it, there was no evidence that on any of the above occasions he was driving the Mustang for either of those authorized purposes.

The accident occurred during the early morning of December 18, 1964, prior to the commencement of garage business, when McCoy was driving with several passengers including the plaintiff. McCoy continued to act as manager of the garage until March 11, 1965, at which time his employment was terminated.

Suit was filed by the plaintiff against Onorato, McCoy, and the Owner. Summary judgment was granted in favor of the Owner on May 2, 1966, and in favor of Onorato on December 8, 1967. On December 11, 1967, the case against McCoy was tried and a default judgment of $70,000 was rendered.

The plaintiff moved to set aside the summary judgment which had been granted in favor of Onorato asking the court to take into account all the documents filed in opposition to the original motion for summary judgment as well as testimony adduced at the trial against McCoy and a further exhibit, which was not admitted into evidence at the trial. The motion also asked for a new trial against McCoy on the issue of damages. On December 15, 1967 the motion was denied and judgment as to all the parties was entered. The plaintiff appealed claiming that summary judgments should not have been granted in favor of Onorato or the Owner and that the damages awarded the plaintiff against McCoy are inadequate as a matter of law.

In response to a question asked by the court during oral argument concerning the theory under which the plaintiff was proceeding against the Owner, counsel for the plaintiff admitted that her case against the Owner depended upon Onorato's successful denial of a bailment to it from the Owner. Counsel for Onorato then abandoned its denial of the bailment. The plaintiff's claim against the Owner will therefore be considered abandoned.

A. Summary Judgment

In considering the validity of the granting of summary judgment under H.R.C.P. Rule 56 (c),[1] the appellate court must determine whether any genuine issue as to a material fact was raised and whether the moving party was entitled to judgment as a matter of law. *Richards* v. *Midkiff,* 48 Haw. 32, 39, 396 P.2d 49, 54 (1964). The inferences drawn from the underlying facts alleged in the materials (affidavits, testimony, exhibits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. *United States* v. *Diebold, Inc.* 369 U.S. 654, 655 (1962). Where the defendant is the moving party, there is no genuine issue as

---

[1] H.R.C.P. Rule 56 (c) reads in part:

The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

to any material fact and the defendant is entitled to a judgment as a matter of law if, upon viewing the record in the light most favorable to the plaintiff, it is clear that the plaintiff would not be entitled to recover under any discernable theory. The plaintiff contends in substance that the defendant Onorato is liable on each of the following grounds: respondeat superior, negligent promotion of McCoy to position as manager, negligent entrustment of bailed automobiles, negligent failure to control McCoy, and ratification of McCoy's wrongful acts.

Assuming, without deciding, that all of the affidavits, testimony and exhibits urged by the plaintiff to be taken into account are proper for our consideration, we find that the granting of summary judgment in favor of Onorato was proper because there is no theory under which she may recover.

## 1. Respondeat Superior

In order to recover from an employer for damages resulting from the torts of his employee under the theory of respondeat superior, the act complained of must have been within the scope of the employment. *Matsumura* v. *County of Hawaii,* 19 Haw. 496, 500 (1909). Since the plaintiff did not controvert by factual allegations Onorato's deposition testimony asserting that it was not within the scope of McCoy's employment to be driving the Mustang at the time and place of the accident, there is no way for this court to find a dispute between the parties as to that issue.

## 2. Negligent Promotion

In order to recover on the theory of negligent promotion there must be a showing that the employer knew or should have known that the employee was incompetent or unfit to perform the job to which he was promoted. *Stumpner* v. *Harrison,* 136 A.2d 870 (D.C. Mun. Ct. App. 1957). Clearly the only evidence showing unfitness as a manager of this particular garage is the hit and run conviction and, possibly, the joyriding conviction, the inferences being (a) that McCoy might hit another car enroute to repairs or polishing of a customer's car or (b) that he might use one of the

customers' cars without authorization. There is no evidence that Onorato had any knowledge of this criminal record. Therefore, it cannot be held liable under this theory unless it should have known about the facts which purportedly demonstrated McCoy's incompetency. We hold as a matter of law that it is not negligence for an employer to promote an employee to the position of manager without making a detailed investigation at that time of his possible criminal past under circumstances where, upon commencement of employment more than three years earlier, he was successfully bonded, his previous job checked out satisfactorily, and during the interim period of employment, he performed exemplary service for the employer. *See Tortora* v. *General Motors Corp.,* 373 Mich. 563, 130 N.W.2d 21 (1964). Indeed, even if the hit and run conviction were known or imputed to the employer, we are not convinced that this single accident occurring some four years prior to the promotion to manager would be sufficient to permit a jury to decide that a driver was incompetent to such a degree that his retention in service would be at the employer's risk. *R. J. Reynolds Tobacco Co.* v. *Newby,* 145 F.2d 768, 771 (9th Cir. 1944).

### 3. Negligent Entrustment

Under the theory of negligent entrustment, the plaintiff claims that the defendant was negligent in entrusting potentially dangerous automobiles to an incompetent driver. In order to recover under this theory there must be a showing that the facts giving rise to the alleged incompetency were known or should have been known to the entrustor at the time of the entrustment. *Restatement (Second) of Torts* § 390 (1965); *Williamson* v. *Eclipse Motor Lines, Inc.,* 145 Ohio St. 467, 471, 62 N.E.2d 339 (1945). We find nothing in the record which would permit a jury to find such negligence for reasons indicated above under "Negligent Promotion."

### 4. Negligent Failure to Control

The relationship of employer and employee may, under certain circumstances, create a duty on the employer to control

the conduct of the employee when the acts complained of are so connected with the employment in time and place as to give the employer a special opportunity to control the employee. Harper and Kime, *The Duty to Control the Conduct of Another,* 43 Yale L.J. 886, 896 (1934). It is essential for liability that there be a showing by the plaintiff that the employer knew or should have known of the necessity and opportunity for exercising such control. *Restatement (Second) of Torts* § 317 (1965); *S. Birch & Sons* v. *Martin,* 244 F.2d 556, 561 (9th Cir. 1957).

In applying these principles to this case, there is insufficient evidence in the record to permit the case to go to a jury under this theory. The only evidence claimed by the plaintiff to support this theory is that McCoy was seen driving the Mustang several times and was also seen racing down the street once well after the closing hours for the garage. There was no evidence that Onorato was cognizant of any events which would put it on notice that its supervisor needed supervising. McCoy was the supervisor of this garage for approximately two months before the accident occurred. It was not unreasonable conduct for Onorato to permit its manager to do his job without strict supervision for a two-month period when nothing had occurred to put it on notice that all was not well. Even if we were to hold that Onorato should have investigated and found that McCoy made personal use of the Mustang, thereby making that knowledge imputable to Onorato, it would not strengthen the plaintiff's case. Such an imputation might permit a jury to find that the defendant was negligent toward the Owner of the Mustang, to whom a duty might have been owed because of the contract between them. However, these facts alone would not be enough to permit a jury to find negligence toward an unknown third party such as the plaintiff because they do not give rise to any duty owing to her. *See* Prosser, *Law of Torts,* at 282-83 (3d ed. 1964). Such a duty might arise if it were found that Onorato knew or should have known that McCoy was a negligent driver. There is nothing in the record to support such a finding. McCoy's after-hours conduct on the road would not help the plaintiff's case because it was not known to Onorato. Such knowledge could not reasonably

be imputed to it since an employer, under ordinary circumstances, is under no duty to investigate an employee's conduct during off-hours.

## 5. Ratification

McCoy was not discharged until nearly three months had elapsed after the accident. The plaintiff suggests that this continuation of employment constituted a ratification of McCoy's actions by Onorato because of a failure to repudiate promptly these acts by way of discharge.

In order to hold an employer liable for the consequences of an employee's tort on the ground of ratification, the act which is subject to ratification must have been done on behalf or under the authority of the employer. *Lemmons* v. *City of DeCatur,* 215 Ga. 647, 648, 112 S.E.2d 597, 598 (1960). The record is totally devoid of any evidence showing that McCoy acted on behalf of Onorato, with its authority or permission, or that the plaintiff was ever led to believe that Onorato was in any way involved in the ride with McCoy on that fateful day. Even if we were to assume that McCoy did hold himself out to be acting with permission of Onorato, Onorato cannot be held liable on the ground of ratification unless there is clear evidence of the approval of the wrongful conduct. The continuance of McCoy's employment alone is insufficient to show such approval *See* Seavey, *Ratification by Silence,* 103 U. Pa. L.R. 30, 35 (1954); *Sheaf* v. *Minneapolis, St. P. & S. S. M. R. Co.,* 162 F.2d 110, 115 (8th Cir. 1947). Such continuance is "too readily open to explanation on other grounds." *Turner* v. *American District Telegraph & Messenger Co,.* 94 Conn. 707, 711, 110 A. 540, 544 (1920) If we held otherwise, we would in effect be requiring the discharge of an employee whenever an employer learns of an employee's wrongful act. Surely we should wish to promote a policy of clear and objective reflection when a man's job is at stake. Since we are all subject to human frailties, we think that the law should permit an employer to retain and give an opportunity to an employee to redeem himself where he has acted tortiously, without the employer being found to have ratified the tort. Of course, the em-

ployer would thereafter be on notice that such conduct on the part of the employee is a future possibility, and he would be required to take reasonable steps to assure it would not occur again. *Restatement (Second) of Torts* § 317, Comment *c* (1965); *Restatement (Second) of Agency* § 213 (d) (1958).

### B. Inadequacy of Damages

We have examined the record closely and have not found any sufficient showing of inadequacy of damages.

Affirmed.

*Joseph A. Ryan* (*Ryan & Ryan* of counsel) for plaintiff-appellant.

*Alexander C. Marrack* (*Robertson, Castle & Anthony* of counsel) for defendant-appellee, S. E. Onorato Garages.

*James F. Ventura* (*Ronald D. Libkuman* of counsel) for defendant-appellee, James R. Anderson.