**BONNIE L. SMITH**, individually and as assignee of the Estate of Charles M. Harting, Plaintiff–Appellee, v. **NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY**, Defendant–Appellant

NO. 14442

(CIV. NO. 88–2787)

FEBRUARY 7, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY MOON, J.

This is a life insurance case involving cross–motions for summary judgment on the issues of coverage and standing. Bonnie L. Smith (Smith), plaintiff–appellee, claims that she is entitled to $25,000 of life insurance proceeds under a policy issued by defendant–appellant New England Mutual Life Insurance Company (New England). The circuit court agreed with Smith and granted summary judgments on both issues in her favor and against New England. We reverse on the issue of coverage and remand this case for entry of judgment in favor of New England.

I.

The facts are not in dispute. New England issued an employee group life insurance policy to Hawaii Pacific College (HPC) on July 1, 1984. The insured in this case was Smith's sister, Ellen F. Harting (Mrs. Harting). Mrs. Harting was employed by HPC continuously, on a part–time temporary basis, beginning the spring semester of 1985. She became a full–time employee on August 24, 1987. Less than three months later, on November 2, 1987, she committed suicide.

New England's policy provided that benefits be paid to an employee's designated beneficiary at the time of the employee's death. However, the policy also provided for a waiting period

before an employee was eligible for insurance coverage, as follows:

> Subject to the section of this Policy entitled "Eligibility for Coverages", *each employee* to be insured under any part of the employee insurance provided hereunder *shall be eligible upon completion of the waiting period shown below*:

> \* \* \*

> (2) Persons who become *employees* after the effective date of the Policy, *upon completion of three months of continuous active service.*

(Emphasis added.)

> "Employee" was defined in the policy as
> [a]ny person employed and compensated for services by the Policyholder . . . *on a regular full–time permanent basis.*

(Emphasis added.)

## II.
## A.

One of the circuit court orders now being appealed granted summary judgment in favor of Smith on the issue of coverage. The trial court agreed with Smith that the policy language "continuous, active service" as used in the three–month waiting period provision was not limited to full–time employment. Because Mrs. Harting had been continuously employed by Hawaii Pacific College for more than three months at the time of her death, and was in fact a full–time employee when she died, the court below found that she was eligible for coverage under the policy. We disagree with the trial court because we find that the policy language in this case

is clear. Smith has attempted to create an ambiguity where none exists.

Hawaii Revised Statutes (HRS) § 431:10–237 provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." Smith's construction of the waiting period exclusion of the policy in question completely ignores the definition of "employee." Under the policy, eligibility for benefits vests after "completion of three months of continuous active service" by an employee, who is defined as "[a]ny person employed . . . on a regular *full–time permanent* basis" (emphasis added). The clear implication of the waiting period provision is that coverage is effective only after three months of continuous service as a *full–time permanent* employee. Smith argues that if this is the meaning New England intended, it could have made that meaning clear by specifically adding the implied phrase. However, we find the waiting period exclusion, as written, to be clear and unambiguous because the term "employee" as used therein must be read and construed according to its meaning as defined in the policy. HRS § 431:10–237.

The court below found that two prerequisites determined coverage: one, the status of the insured as a full–time employee; and two, completion by the insured of three months of continuous, active service. With respect to the second requirement, the court found that Mrs. Harting's part–time employment could be included in satisfying the three–month requirement. We disagree with the trial court's interpretation of the policy. Specifically, we find the court's statement that "the policy does not limit continuous, active service to [full–time] employees only" to be incorrect.

First, HRS § 431:10–237 requires that the stated definition of employee be used wherever that term appears in the policy. Thus, we need only substitute its meaning where the term is used. The waiting period provision would then read, ". . . each [person

employed and compensated for services by the Policyholder . . . on a regular full–time permanent basis] . . . shall be eligible . . . upon completion of three months of continuous active service."

Second, it is clear from a reading of the entire waiting period provision that "continuous active service" is limited to full–time service, and should not include service as a part–time employee.

The waiting period provision, *in its entirety*, reads as follows:

> Waiting Period–Employees. Subject to the section of this Policy entitled "Eligibility for Coverages", each employee to be insured under any part of the employee insurance provided hereunder shall be eligible upon completion of the waiting period shown below:
>
> (1) Persons who are employees on the effective date of the Policy, on the date of issue of the Policy or upon the completion of three months of continuous active service, whichever is later;
>
> (2) Persons who become employees after the effective date of the Policy, upon completion of three months of continuous active service.

Keeping in mind that "employee" is defined in the policy, it is obvious that subparagraphs (1) and (2) were meant to separate employees of HPC, employed on a full–time basis, into two categories: 1) those who were full–time employees on the date the policy was issued, and 2) those who became full–time employees subsequent to the date of issue. It is clear that under subparagraph (1), any full–time employee who had already completed three months of continuous active service would be covered as of the date of issue; if on the date of issue a full–time employee did not have three months of continuous active service, then that employee would be required to complete the three months before coverage is effective.

Under subparagraph (2), a person who becomes a full–time employee after the policy issue date would be required to complete three months of continuous active service from the date upon which that employee attained full–time status. The clear implication from a reading of both subparagraphs is that the point from which the three month period is calculated is from the date the employee attains full–time status. Thus, even if it can be said that Mrs. Harting's consecutive semester employment was "continuous" and "active," such service was not rendered as an employee with full–time status. We find that the trial court's interpretation of the waiting period exclusion not only ignored the stated definition of employee but required that phrases be taken out of context.

In *Northwestern National Life Insurance Co. v. Brevell*, 291 S.W.2d 957 (Tex. Ct. App. 1956), a case on point, Douglas Brevell worked part–time for his employer for several years. On June 5, 1954, he became a full–time employee. Five months later, on November 9, 1954, he died. The life insurance policy under which Brevell's mother claimed benefits provided that "new employees shall be eligible for insurance hereunder on the day of completing six months of continuous service with the employer." "Employees" was defined in the policy as "all full time employees." The claimant argued that there was "no requirement in the policy that any employee have six months of continuous service as a full time employee in order to become eligible for insurance," and that the insurance company had written the phrase "as a full time employee" into the policy. 291 S.W.2d at 959. The Texas Court of Appeals disagreed, commenting as follows:

> Obviously, the requirement that an employee be a full time employee for six months is not a creature of imagination of the [insurance company] for the purposes of this lawsuit, but was included in the amendments to the policy. Such amendments were in effect when the deceased first went to work for the employer. It must be conceded

that if the policy did not define "employee" as a full time employee of [the employer], then the [claimant] would have good cause to argue that the deceased was eligible under the terms of the group policy, since there is no question but that he had been in the continuous service of the company for more than six months at the time of his death. However, the definition is included in the insurance agreement between the [insurance company] and the employer and it is a part of the contract.

291 S.W.2d at 959.

In the present case, we have a similar insurance policy and similar arguments in favor of coverage. Smith argues that the *Brevell* case is distinguishable because the Texas court did not interpret the "ambiguity" in favor of the insured. According to Smith, *Brevell* "is old, is wrong, and would have been decided differently under Hawaii law." However, the requirement that the court construe ambiguities in favor of coverage only applies if there is truly an ambiguity.

We agree with New England's position in this case that the policy in question clearly provided that an employee was only entitled to coverage "upon completion of the waiting period" of "three months of continuous active service." The policy separately defined "employee" as including only full–time permanent employees, and that definition applied throughout the policy. We simply see no ambiguity. Ambiguity is found only where the policy, when taken as a whole, is reasonably subject to differing interpretations. *Liberty Mut. Ins. Co. v. United Nat'l Ins. Co.*, 69 Haw. 37, 40, 731 P.2d 167, 170 (1987). A court must "respect the plain terms of the policy and not create ambiguity where none exists." *First Ins. Co. of Hawaii, Inc. v. State ex rel. Minami*, 66 Haw. 413, 423–24, 665 P.2d 648, 655 (1983). When we view the policy here as a whole, we fail to see how it is reasonably subject to more than one interpretation.

We would concede, as did the court in *Brevell*, that if the policy had not defined the term "employee," Smith would have good cause to argue that Mrs. Harting had been in continuous active service for more than three months prior to her death. However, that is simply not the case here. The minority ignores the definition of "employee" as specified in the policy and by doing so creates the ambiguity it claims exists.

We also disagree with the minority view that there are genuine issues of material fact in this case. Even the parties do not argue the existence of genuine issues of material fact that would preclude summary judgment. In fact, the parties agree that the material facts are *not* in dispute.

The record in this case is clear. The unchallenged affidavit of Donald S. Gedeon, Vice President of HPC, attached to New England's motion for summary judgment states:

> 8. That Mrs. Harting became a full–time permanent employee of HPC as of August 24, 1987 when she was appointed as an Instructor of English for the 1987–1988 Academic Year;
>
> 9. That prior to August 24, 1987, Mrs. Harting was not a full–time permanent employee of HPC; [and]
>
> 10. That prior to August 24, 1987, Mrs. Harting was a part–time employee of HPC who, on occasion, was appointed to part–time or temporary teaching assignments by HPC[.]

Further, in Smith's own cross–motion for summary judgment on the issue of coverage, she agrees that "[t]he facts in this case are undisputed. Ellen F. Harting was employed by HPC on a continuous, active basis as a *part–time* employee beginning in 1985. She became a *full–time permanent* employee on August 24, 1987." (Emphasis in original.) Smith also states that "[Mrs. Harting] had been a continuous, active *part–time* employee of HPC since 1985. This is undisputed[,]" and that "[b]efore the date of her death, she

had continuously actively served HPC as a *part–time* employee for at least two and one–half years." (Emphasis added.) In support of her contention that there are no factual disputes, Smith attached the business records of HPC to her cross–motion, which included part–time temporary faculty appointment letter agreements between HPC and Mrs. Harting. Each letter agreement for temporary employment covered the period of *one semester* and indicated that Mrs. Harting's appointment as an instructor was either "part–time" or "temporary." Beginning with the spring semester of 1985 up through the spring semester of 1987, HPC and Mrs. Harting entered into five separate letter agreements for temporary employment. On February 20, 1987, Mrs. Harting and HPC entered into a sixth agreement for employment for the 1987–1988 *academic year*, which began on August 24, 1987, wherein her status was changed to full–time.

Additionally, at the hearing on the cross–motions for summary judgment on February 14, 1990, the following exchange between court and counsel occurred:

> [New England's Counsel]: ... In this case Mrs. Harting became a regular, full–time, permanent employee of HPC on August 24, 1987.
> THE COURT: That's not disputed, really, is it?
> [Smith's Counsel]: Not at all, Your Honor. I don't think there's any factual dispute at all.

From our review of the evidence, including the business records of HPC, we agree with the parties that there is no dispute that 1) Mrs. Harting became a full–time permanent employee on August 24, 1987, and 2) prior to August 24, 1987, Mrs. Harting's employment status was on a part–time, temporary basis.

As Smith in her answering brief so aptly states: "The question for the court is to take these undisputed facts and apply the policy wording to them." However, despite the position of the parties that the question presented on appeal is one of law, the minority points

to the record and curiously seeks to advocate the existence of genuine issues of fact where the parties themselves agree that none exist.

The minority in urging that a genuine issue of fact exists states:

> Why appellee's counsel's concession that Mrs. Harting was a "part–time" employee is *conclusive* to the majority, while the concession of the appellant insurance company's counsel at oral argument that she was full–time in the preceding semester is of *no significance* to the majority is a little difficult to comprehend in the context of a summary judgment.

(Emphasis in original.)

The portion of the oral argument that the minority refers to is as follows:

> Justice Padgett:   When you .say part–time, what we're trying to do is to find out — you know, for a moment there, I thought you were describing a situation where *the college doesn't consider her a full–time employee because they are employing her one semester at a time, even if she is working the same number of hours during that semester as a full–time employee would be working.*
>
> Counsel: *That appears to be, ah, what the situation is.* You've got, ah, contracts issued on a semester basis as opposed to an entire year and the college took the position that she became a[n] "instructor" by virtue of the contract that went one year . . . .

(Emphasis added.) The minority misinterprets the above exchange as a concession by New England's counsel that Mrs. Harting "was full time in the preceding semester," within the context of the issue presented.  Counsel for New England, in responding to the court,

merely agreed with what the undisputed facts were, that is, that HPC did not consider Mrs. Harting to be a full–time employee while working on a semester basis. New England's counsel simply agreed with the court that even if Mrs. Harting was working the same number of hours during a particular semester as a regular full–time employee, HPC did not consider her to be "full–time." It is common knowledge that many employers hire workers on a part–time or temporary basis, and that such employees may actually work eight–hour days and forty–hour weeks. While such employees may consider themselves to be working "full–time," their *employment status* is determined by their employer and not by the employees themselves. Thus, the fact that Mrs. Harting, prior to August 24, 1987, was working the same amount of hours as a regular full–time employee does not change her employment status.

*Lloyd v. Franklin Life Insurance Co.*, 245 F.2d 896 (9th Cir. 1957), involved an action by a beneficiary under a life insurance policy. On cross–motions for summary judgment, the insurer attempted to condition an admission of fact only for the purpose of its motion for summary judgment. The Ninth Circuit Court of Appeals held such condition invalid and stated:

A concession of fact on motion for summary judgment establishes the fact for all time between the parties. The party cannot gamble on such a conditional admission and take advantage thereof when judgment has gone against him. This Court will not emasculate thus the efficient devices of summary judgment. ... This is not to say that there could be no relief by the court from an erroneous admission of a party. But there cannot be a tentative or conditional admission on a motion for summary judgment, which by definition posits that there are not in truth any unresolved issues of material fact which must be tried if the wheel turns wrong. Of this all practitioners should

take notice. The facts should be established first, and the law can only be laid in light thereof.

In this case, Smith placed no condition on her representation that the facts were undisputed only for the purpose of her motion for summary judgment. Moreover, she does not assert on appeal that such concessions of facts were erroneous admissions. Nor do we find that they were erroneous.

Counsel's decision to controvert or admit facts in a summary judgment proceeding is presumed to be based on examining and analyzing all of the evidence available, especially that which has been submitted in support of the motion for summary judgment. Such decisions may be tactical or strategic and are best left to counsel, who presumably have full knowledge of all aspects of their respective cases. Where the parties agree that the facts are undisputed and the question for the court is one of application of law, the role of the appellate court in review should not include second guessing counsel's reasons for his or her position.

In urging coverage, Smith also points to the fact that, as of October 1, 1987, New England charged and collected a premium from Hawaii Pacific College to cover Mrs. Harting. New England did not refund the payments until after it learned of Mrs. Harting's death. Accordingly, Smith argues that New England's course of conduct estops it from claiming that Mrs. Harting was not entitled to be covered on the date of her death. However, it is apparent that the reason New England charged a premium for Mrs. Harting is that it was supplied incorrect information by Hawaii Pacific College. In short, the estoppel argument has no bearing on this case. The life insurance policy in question was an employment benefit for which the insured was not required to pay any premiums herself. Moreover, her employer provided the information to the insurance company upon which the insurance company based its collection of premiums. Such circumstances do not support a

finding that Mrs. Harting was entitled to insurance coverage at the time of her death.

This same issue was also raised in *Brevell*. The employer in *Brevell* deducted an amount from the deceased's paycheck to cover the premium for a group life insurance policy. Plaintiff in that case argued that the deduction proved that the deceased was eligible for the insurance coverage. The Texas Court of Appeals held otherwise, stating:

> We are unable to see how this payroll deduction can operate to make the insurance carrier liable, when all of the evidence shows conclusively that under the terms of the policy itself the deceased was not eligible to participate in the group insurance at the time the deduction was made, and was not so eligible at the time of his death in November, 1954.

*Brevell*, 219 S.W.2d at 959. In the present case, we also conclude that the payment of an insurance premium by Mrs. Harting's employer does not operate to make New England liable when the policy provisions clearly excluded her from eligibility at the time of her death.

## B.

The second order being appealed, also granting summary judgment in favor of Smith, concerns the issue of Smith's standing to claim any life insurance benefits. Smith claims to be entitled to the proceeds of the insurance policy either as a designated beneficiary or as the assignee of Mrs. Harting's husband's estate. Having found in favor of New England on the issue of coverage, we need not consider the issue of Smith's standing.

## III.

Based on the foregoing, we reverse the summary judgment on the issue of coverage in favor of Smith and remand this case for entry of summary judgment in favor of New England.

*David F. Simons* for plaintiff–appellee Bonnie L. Smith.

*Archie T. Ikehara* (*Ward F. N. Fujimoto* with him on the brief) for defendant–appellant New England Mutual Life Insurance Company.

## DISSENTING OPINION OF PADGETT, J., WITH WHOM LUM, C.J., JOINS

We respectfully dissent.

The majority today, in a case where cross–motions for summary judgment were filed, and the appellee's motion granted, orders a remand for entry of judgment in favor of the appellant insurance company.

The majority begins with the flat assertion that the facts in this case are undisputed. That is simply not so, as is demonstrated below in the extended discussion of the facts in the record.

The appellee, in arguing in support of the judgment below, conceded in her brief here that the decedent became a permanent full–time employee of HPC on or about August 24, 1987, and made the same concession, for the same purpose, in the court below.

Why appellee's counsel's concession that Mrs. Harting was a "part–time" employee is *conclusive* to the majority, while the concession of the appellant insurance company's counsel at oral argument that she was full–time in the preceding semester is of *no significance* to the majority, is a little difficult to comprehend in the context of a summary judgment proceeding.

The majority refers to our construction of appellant's counsel's admission at oral argument as a "misinterpretation," but the letters of employment show that Mrs. Harting had been carrying a full load of academic teaching hours for several semesters prior to

August 1987, so our construction, and counsel's admission, is in accord with the facts. The majority's opinion expressly *weighs* these admissions, as it does the evidence in the record. That is exactly what should not be done on summary judgment.

It is, in our view, the appellate court's responsibility to examine the documents in the record below, which were called to the judge's attention, to determine whether there was a genuine issue of material fact with respect to whether Mrs. Harting qualified for coverage at the time of her death. It is not our function, on this appeal, to weigh the evidence as the majority does.

We think that the authorities amply support our view that we should not abdicate our responsibility to examine the facts in the record including the employment contracts, simply because of concessions that counsel may have made for the purposes of arguing their legal theory that Mrs. Harting was covered even if she was a part–time employee. That is not to say that those concessions cannot, and should not, be taken into consideration in deciding the factual issue when the litigation has reached the stage where factual *issues* are supposed to be determined. It is to say that if there is a factual issue in the record, that issue should, for purposes of summary judgment, remain such, and not now be decided by weighing the evidence, concession in argument, or not.

The majority, quoting from a ninth circuit case, *Lloyd v. Franklin Life Insurance Co.*, 245 F.2d 896 (9th Cir. 1957), makes counsel's concession, in appellant's brief and below, a principal basis for its claim that the facts are undisputed.

However, before the dictum quoted from *Lloyd* in the majority's opinion, the Court of Appeals for the Ninth Circuit had this to say:

> After judgment was rendered for the Company, however, she made a motion to vacate judgment on the ground that there were material questions of fact unresolved. If this

Court on appeal had found that proposition true, the cause must have been reversed, irrespective of the fact that each of the contesting parties respectively filed a motion for summary judgment. The able judge of the trial court, however, found expressly that there remained on the record no "issue as to any material fact." The record so shows. We affirm this holding.

245 F.2d at 897.

And after the dictum alluding to the concession that had been made, in the language which the majority quotes, the Court of Appeals for the Ninth Circuit, unlike the majority here, meticulously went through the record to demonstrate that, on the documents in the record, there was no genuine issue of disputed material fact, and that the judgment which had been rendered below should be affirmed as a matter of law. The reason for this is found in the sentence in the opinion immediately following the majority's quote. That sentence reads: "The facts should be established first, and the law can only be laid down in light thereof." *Id.*

In reviewing the law on cross–motions for summary judgment under the identical federal rule, the following is stated in 10A C. WRIGHT, A. MILLER AND M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2720, at 16–19 (2d ed. 1983):

However, the fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit. As was explained by the Third Circuit in Rains v. Cascade Industries, Inc.:

Cross–motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an

agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury.

There are basically three reasons why cross–motions under Rule 56 do not necessarily indicate that the case is ripe for final resolution and the entry of judgment. First, the determination whether a genuine issue concerning a material fact exists is itself a question of law that must be decided by the court. It does not depend upon what either or both of the parties may have thought about the matter.[1]

(Footnotes omitted.)

In view of the majority opinion, some reiteration of the basic rules, applying when summary judgments are granted, appears necessary.

As we said in *Technicolor, Inc. v. Traeger*, 57 Haw. 113, 118–19, 551 P.2d 163, 168 (1976):

On review of a summary judgment proceeding, the standard to be applied by this court is identical to that

---

[1] It is interesting to note that among the cases cited in support of that proposition, in the text referred to, is the case of *Brawner v. Pearl Assurance Co.*, 267 F.2d 45 (9th Cir. 1958), an opinion written by the same Judge Fee who wrote the opinion in *Lloyd* and who after stating: "In contrast, by definition, a summary judgment cannot be granted if there be a disputed question of material fact. This determination does not depend upon what either or both parties may have thought about the matter[,]" (267 F.2d at 46), cites other opinions in support thereof in a footnote and then adds "[s]ee Lloyd v. Franklin Insurance Company, 9 Cir., 245 F.2d 896."

employed by the trial court. . . . This means that ". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." *Gum v. Nakamura*, 57 Haw. 39, 549 P.2d 471 (1976); *Aku v. Lewis*, 52 Haw. 366, 477 P.2d 162 (1970); *Abraham v. Onorato Garages*, 50 Haw. 628, 446 P.2d 821 (1968). Further, in considering the validity of the granting of summary judgment under H.R.C.P. Rule 56(c), the appellate court must determine whether any genuine issue as to a material fact was raised and, if not raised, whether the moving party was entitled to judgment as a matter of law. . . .

*See also Gealon v. Keala*, 60 Haw. 513, 591 P.2d 621 (1979); *Hunt v. Chang*, 60 Haw. 608, 594 P.2d 118 (1979).

The majority opinion places much reliance for its "finding" that Mrs. Harting was not a full–time employee until August 24, 1987, on the affidavit of one Donald S. Gedeon, Vice President of HPC, which it says is "unchallenged." The fact is, however, that Mrs. Harting's employment by HPC, beginning in the spring of 1985, was fixed by a series of letter contracts between her and HPC.

HRCP 56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

This court stated in *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975):

Rule 56(e), H.R.C.P., requires that affidavits in support of or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." To the extent that the affidavits did not comply with this rule they should be disregarded. . . .

Again, in *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396–97, 772 P.2d 1187, 1190 (1989), we stated in footnote 2:
HRCP 56(e) provides in part that

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Thus, an affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment. *Rodriguez v. Nishiki*, 65 Haw. 430, 434 n.3, 653 P.2d 1145, 1148 n.3 (1982); *see also Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975) ("To the extent that the affidavits [do] not comply with [HRCP 56(e)] they should be disregarded.").

Mr. Gedeon's affidavit, insofar as it purports to vary the terms of the written contracts of employment between Mrs. Harting and HPC, violates HRE 1002, which provides:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is

required, except as otherwise provided in these rules or
by statute.

Mr. Gedeon's affidavit falls within none of the exceptions set forth
in HRE 1003, 1004 and 1007.

In the analysis of HRE 1002, contained in A. BOWMAN,
HAWAII RULES OF EVIDENCE MANUAL § 1002–2, at 396 (The
Michie Co. 1990), it is stated:

> "The modern justification for the [original docu-
> ment] rule has expanded from prevention of fraud to a
> recognition that writings occupy a central position in the
> law," observed the court in *Seiler v. Lucasfilm, Ltd.*, 808
> F.2d 1316, 1319 (9th Cir.), *cert. denied*, 484 U.S. 826
> (1987) (discussed in the preceding section). Testimony
> about the contents of a writing has a greater potential for
> error than does testimony about events and situations.
> "[T]he importance of the precise terms of writings in the
> world of legal relations, the fallibility of the human mem-
> ory as reliable evidence of the terms, and the hazards of
> inaccurate or incomplete duplication are the concerns
> addressed by the [original document] rule."

As previously pointed out, we have repeatedly held that this
court, at this stage of the proceeding, stands in the same position of
the trial court, and must examine the record to see if it is undis-
puted, as the majority says, that

> Mrs. Harting was employed . . . on a part–time temporary
> basis, beginning the spring semester of 1985. She
> became a full–time employee on August 24, 1987. . . .

In deciding whether there is a dispute on those vital points, we
should look not only at the questionably admissible affidavit of
Mr. Gedeon, and at the statements of counsel at oral argument, in
the briefs, and in the memoranda below, but primarily at the con-

tracts of employment between Mrs. Harting and HPC, as well as the appellant's form dated August 18, 1987.

The employment contracts in the record show that Mrs. Harting, by a letter agreement, dated October 25, 1984 and signed by the decedent on November 9, 1984, was employed as a "temporary instructor" of English for the Spring 1985 semester to do twelve semester hours of classes and twenty hours per week of registration and preregistration services. Identical agreements were entered into before the commencement of the Fall semester for 1985, the Spring semester for 1986, the Fall semester for 1986, and the Spring semester for 1987. Then, on February 10, 1987, Hawaii Pacific College wrote a letter to the decedent appointing her as an "instructor" of English for the 1987–1988 school year to do twenty–four semester hours of classes with the salary of $12,880 for the twelve–month period.

Aside from the first paragraph which fixed the salary, the semester hours, and the title, the letter was identical with the previous letters. The decedent executed that letter on February 18, 1987, for an academic year to start August 24, 1987. [2]

The difference between the four semester contracts previously entered into, and the year contract for 1987–1988, are as follows:

1. The first four agreements were for one semester only, the last one was for a full academic year, i.e., two semesters.

2. In the four semester agreements the decedent is referred to as a "temporary" instructor, in the one–year agreement the word "temporary" does not appear.

3. The first four agreements are for twelve semester hours, the last one is for twenty–four semester hours. That, however, is

---

[2] There are two forms in the record indicating a part–time arrangement with respect to two courses in the fall of 1986. There is no explanation in the record of why these agreements were entered into in light of the pre–existing arrangement for that semester.

apparently explicable by the fact that it covered two, rather than one, semesters.

4. The compensation was somewhat more than doubled.

In addition to the contracts, there is, in the record, the appellant's form, apparently turned in by the decedent on August 18, 1987. It contains under "Employed Full–Time" an entry, which appears to be "January 1979,"[3] apparently crossed–out, and the date "10–1–87," apparently written in by an unknown hand. There is no explanation in the record for this somewhat anomalous entry, and no explanation could be given as to it on oral argument.

We note that under the agreement Mrs. Harting was to render services during the "registration and preregistration period" but the record is silent as to when those periods commenced so that they might have commenced prior to August 2, 1987.

After a claim for coverage had been filed, New England Mutual returned the life insurance premium for Mrs. Harting to Hawaii Pacific College.

On this record, in order to grant a summary judgment to the appellant insurance company, the majority, rather than making findings of fact, should have determined whether: (1) there was a genuine issue of material fact as to whether Mrs. Harting was working only "part–time" up until less than three months prior to November 2, 1987; and (2) there was a genuine issue of material fact that Mrs. Harting was not a "permanent" employee until less than three months prior to November 2, 1987.

It is obvious from the five contracts in the record that Mrs. Harting, whether she was a "temporary instructor" or merely an "instructor" at the time, carried a full academic load of teaching hours for the semesters involved, and put in up to twenty hours

---

[3] The use of "Employed Full–Time" is some evidence that "continuous" means "full–time."

per week during the registration and preregistration period each semester, just as any other instructor apparently did. It is also obvious from the record that there are gaps between semesters when the "instructors," including "temporary" instructors, at Hawaii Pacific College are not teaching.

It is equally obvious from the record that Mrs. Harting, whether she was employed for a semester, or for an academic school year consisting of two semesters, was employed on contracts for a fixed period of time. There is nothing in the record to indicate that Mrs. Harting, by receiving a year's contract, received tenure, and so legally, as far as the record goes, Hawaii Pacific College was not obliged to offer her a new contract for the ensuing year. We have been unwilling to hold that employment contracts for a fixed term, or indefinite employment contracts, can be terminated only for good cause. *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982); *see also Kinoshita v. Canadian Pac. Airlines, Ltd.*, 68 Haw. 594, 600, 724 P.2d 110, 115 (1986). Thus, there is nothing in the record to indicate that Mrs. Harting ever became, legally, a *permanent* employee, in the sense that tenured professors at academic institutions, and civil servants, are permanent employees. Moreover, we note that the word "instructor" in the 1987–1988 yearly contract is not preceded by the word "permanent."

The record, therefore, contains evidence which would support a finding: (1) that beginning with the Spring semester of 1985 Mrs. Harting as a teacher, was carrying a full academic load at Hawaii Pacific College, and rendering in full the other services required of teachers; (2) that her services, like those of other teachers, were interrupted by semester breaks; (3) that she executed the contract for the 1987–1988 year in February of 1987, and so during the Spring semester of 1987, while she was carrying a full academic load as a temporary instructor, she had already been hired for the

ensuing year as an instructor; and (4) that under that contract she was to begin rendering services, like any other teacher, of up to twenty hours per week during the registration and preregistration period, which period is not defined in the record, and thus may have commenced prior to August 2, 1987.

Thus in our view there were genuine issues of material fact in this case. There was a genuine issue of material fact as to whether Mrs. Harting was employed on a "full–time" basis for three months prior to November 2, 1987. There was a genuine issue of material fact as to whether Mrs. Harting was employed upon a "permanent" basis prior to August 2, 1987 in view of the execution of the 1987–1988 academic year contract in February of 1987.

The majority, following a Texas case, *Northwestern National Life Insurance Co. v. Brevell*, 291 S.W.2d 957 (Tex. Ct. App. 1956) (which dealt with an employee who did not work full–time, *as the stipulation of facts in that case shows*, 291 S.W.2d at 958, and is thus not apposite here), finds that Mrs. Harting must have completed three months of service from the date when the 1987–1988 academic year commenced in order to be covered under the policy.

The majority, having found no genuine issue of material fact by the simple expedient of ignoring the terms of the written contracts of employment, and their terms, goes on to hold that the insurance contract in question was clear and unambiguous.

The pertinent provisions of the insurance contract were as follows:

> Subject to the section of this Policy entitled "Eligibility for Coverages", each employee to be insured under any part of the employee insurance provided hereunder shall be eligible upon completion of the waiting period shown below:

*   *   *

(2) persons who become employees after the effective date of the Policy, upon completion of three months of continuous active service.

"Employee" is defined in the policy as:

[a]ny person employed and compensated for services by the Policyholder . . . on a regular full–time permanent basis.

Thus there are two requisites for the decedent to have qualified for coverage under the policy: she must have been (1) an "employee" as defined in the policy, and (2) must have completed three months of continuous active service. The term "continuous active service," however, is not defined in the policy.

There is no dispute but that the decedent, Mrs. Harting, had for much more than three months before November 2, 1987, been rendering "active service" to the employer Hawaii Pacific College. There may be a question of whether that service was "continuous." We note that the words "regular," "permanent," and "full–time," are adjectives used in the policy to qualify the word "basis" in the definition of "employee." They are not adjectives used to qualify the words "active service" in the waiting period provision, although obviously they could easily have been put in by the insurer appellant in drafting the contract. Thus there is on the face of the policy a grammatical ambiguity as to the meaning of the word "continuous," the critical word in issue here.

The waiting period provision does not say, as the majority concludes, that

"each [person employed and compensated for services by the Policyholder . . . on a regular full–time permanent basis] . . . shall be eligible . . . upon completion of three months of continuous active service."[4]

---

[4] Even if the policy used those words, there would still be an ambiguity as to the meaning of "continuous active service."

The majority, to buttress its alteration of the policy language states: "HRS § 431:10–237 requires that the stated definition of employee be used wherever that term appears in the policy." HRS § 431:10–237 provides:

> **Construction of policies.** Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.

Thus the statute does not state what the majority claims it states with respect to the term "employee," and that statute certainly does not make what is an ambiguous policy provision unambiguous or make the majority's strained reading of the policy language indisputable.

In our view, the language of the policy is ambiguous as we have pointed out, and the facts in the record are also ambiguous as we have pointed out.

When insurance contracts are to be construed, the law of Hawaii, until today, has been clear. We have said "ambiguity in an insurance policy will be construed in favor of the insured." *Government Employees Ins. Co. v. Franklin*, 66 Haw. 384, 385, 662 P.2d 1117, 1118 (1983). Again, we said:

> Ambiguity in an exception clause is construed in favor of the insured. The burden is upon the insurer to provide unequivocal language to bring itself clearly within the exclusion. An exclusion clause will be strictly construed against the insurer.

*Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970). On another occasion we stated:

> The objectively reasonable expectations of policyholders and intended beneficiaries regarding the terms

of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Hawaiian Ins. & Guar. Co. v. Brooks*, 67 Haw. 285, 285, 686 P.2d 23, 24 (1984).

This approach is required because the typical insurance policy is purchased by persons:

> utterly unacquainted with the niceties of life insurance. . . . It is the understanding of such persons that counts. . . . [T]he ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause [in this case] as leaving him uncovered until the insurer at its leisure approved the risk; he would assume that he was getting immediate coverage for his money. . . . A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.

(Citation omitted).

The insurer must be held responsible for achieving certainty and clarity in the field of insurance.

*Law v. Hawaiian Life Ins. Co.*, 51 Haw. 288, 292, 459 P.2d 195, 198 (1969).

All this time honored law the majority today sidesteps by pronouncing the policy language clear and unambiguous, and by finding, despite the employment letters, that Mrs. Harting was only a "part–time" employee who had not rendered three months of

"continuous" active service to her employer prior to her death on November 2, 1987.

If on trial it develops that Mrs. Harting was in fact only employed part–time prior to the commencement of her rendering services under the final contract, and if the date of that commencement was later than August 2, 1987, then we might well agree that she had not rendered continuous active service for three months prior to her death. But on this record those facts are in doubt.

By the general rules of construction the use of the word "full–time," in the definition of employee, must be taken in its ordinary common sense, and if Mrs. Harting was in fact carrying a full academic load in the previous semester, then we do not see how she can be classified as a "part–time" employee.

As to the word "regular," at the time of her death, Mrs. Harting, according to the contracts, was in the sixth semester of carrying a full–time academic load. This would seem to make her a "regular" employee in the ordinary sense of the word.

As to the word "permanent," if it is used in its ordinary regular sense, Mrs. Harting was not a permanent employee, since she was employed at the time of her death only on a year's contract in which she was only designated as an "instructor" not as a "permanent instructor." The fact that the previous four semester contracts contain the word "temporary" as an adjective qualifying the word "instructor" raises an issue, but does not conclusively establish when she became employed on a "permanent" basis. If having a yearly contract made her "permanent," as seems to be the assumption, then that contract was entered into in February of 1987, well before August 2, 1987.

Finally, even if the majority were right in concluding that it was clear and unambiguous that Mrs. Harting was a part–time employee until she became employed under the yearly contract, and that service must have been rendered for three months under

that contract prior to November 2, 1987, there remains the question of when the registration and preregistration periods, during which she was to render services under that contract, commenced.

The problem with this case is not that the majority is reversing a summary judgment granted below. With that, we are in complete agreement. Moreover, there is no doubt that this court can enter a summary judgment in favor of an appealing appellant where cross–motions for summary judgment had been made below and the appellee's motion granted, where there is, in the record, no genuine issue of material fact. *Flint v. MacKenzie*, 53 Haw. 672, 501 P.2d 357 (1972).

In this case, however, while the parties may have argued the case on the basis of "full–time" versus "part–time," the oral argument and the record make clear that there is a genuine issue of material fact with respect to whether Mrs. Harting had served her employer "full–time" for three months before her death.

Since the record below contains some conflicting records with respect to Mrs. Harting's employment, we would overrule the appellant insurance company's quibble over standing, which the majority says it does not need to deal with, and remand the case for a determination of whether Mrs. Harting was rendering continuous active service to her employer on or before August 2, 1987. This case, on this record, is simply not an appropriate one for a summary judgment for either party.