### Frank LEE, Plaintiff-Appellant,

v.

### TOWN OF ESTES PARK, COLORADO, a Municipal Corporation; Gregg Filsinger, Robert W. Ault; Walter F. Kappely, Odd Lyngholm, Defendants-Appellees.

No. 84–1833.

United States Court of Appeals, Tenth Circuit.

June 5, 1987.

Joseph P. Genchi, P.C., Estes Park, Colo., for plaintiff-appellant.

Gretchen C. Rau (Frank R. Kennedy of Cooper & Kelley, with her on the brief), Denver, Colo., for the Town of Estes Park, Colo., Gregg Filsinger, Robert W. Ault, and Walter F. Kappely, defendants-appellees.

Laurence A. Stanton of Chilson and Stanton, Loveland, Colo., for Odd Lyngholm, defendant-appellee.

Before SEYMOUR, BALDOCK, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Frank Lee filed an action under 42 U.S.C. § 1983 against the Town of Estes Park, a Colorado municipality, and three of its policeman, namely, Chief of Police Robert W. Ault, Sergeant Walter F. Kappely, and Officer Gregg Filsinger. Also joined as a party defendant was Odd Lyngholm, the operator of a Standard Oil gas station in Estes Park. See also asserted pendant claims against Lyngholm, Filsinger, and Estes Park based on false arrest and false imprisonment.

The district court granted summary judgment on Lee's § 1983 claim in favor of Estes Park, Chief Ault, Sergeant Kappely, and Odd Lyngholm, the service station operator, and also dismissed without prejudice the pendant state claims against Lyngholm and Estes Park. Lee now appeals from that order as it relates to his § 1983 claim. At oral argument, Lee's counsel stated that he was abandoning any challenge to the court's dismissal without prejudice of the pendant state claims. Apparently those claims, or some of them, have since been pursued to conclusion in the state court.[1]

Lee's § 1983 and pendant claims against Officer Filsinger were tried to a jury, which returned a verdict in favor of Filsinger. Lee also appeals from the judgment entered on that verdict, claiming trial error by the district court.

The genesis of this dispute is the Estes Park flood in 1982. The Lawn Lake Dam broke and flooded Estes Park, causing considerable destruction of property. Mrs. Imogene Scott Cooper's mobile home was carried off by the floodwaters and part of it ended up on or adjacent to the Standard Oil gas station leased and operated by Odd Lyngholm.

When her mobile home was carried away by the flood, Mrs. Cooper lost a metal box which contained items of some value to her. In an effort to assist Mrs. Cooper in locat-

---

1. We were advised at oral argument that in state court Lee not only lost his false arrest action against Lyngholm, but Lyngholm prevailed against Lee on a counterclaim.

ing the box, Frank Lee, the plaintiff, and his friend, Earl Hunter, went to the area where part of the mobile home had been found, which, as stated, was on or adjacent to the Lyngholm service station, and were using metal detectors in an effort to locate the metal box when Odd Lyngholm arrived on the scene. Lee and Hunter admittedly went behind a yellow plastic ribbon carrying the words, "Police Line—Do Not Cross."

Apparently Lyngholm believed that Lee and his friend were looters and an argument ensued which culminated in Lyngholm making, according to Lee, a citizen's arrest of Lee and taking him in Lyngholm's vehicle to police headquarters in Estes Park. At the scene of the arrest, Lyngholm accused Lee and his friend of trespassing on his property. Lee tried to explain his presence, but Lyngholm was not impressed. One word lead to another and, in this setting, Lyngholm made a "citizen's arrest," using those very words, according to Lee, and Lyngholm then proceeded to escort Lee to the town's police station.[2]

At police headquarters, Lyngholm and Lee were met by Officer Filsinger, who arrived at the station at about the same time. Filsinger separated Lyngholm and Lee, and led Lee to a back room, where he left Lee alone for about 10 or 15 minutes, while he questioned Lyngholm. After talking with Lyngholm, Officer Filsinger decided to charge Lee with disorderly conduct, Lyngholm signing the summons as the "complainant." Lyngholm thereafter left the station. Filsinger then served the summons on Lee, and Lee, too, left the station house. Lee was neither fingerprinted nor photographed. The disorderly conduct charge was later dismissed on recommendation of the city attorney. Based on this sequence of events, Lee brought the present action in the United States District Court for the District of Colorado.

### Lyngholm

The district court granted summary judgment in favor of Lyngholm on Lee's § 1983 claim on the ground that Lyn-

gholm's actions in making a "citizen's arrest" and transporting Lee to the police station were the actions of a private citizen and that there was no showing that Lyngholm acted in concert with the police or otherwise acted under color of law within the meaning of § 1983. We agree.

If we understand Lee's argument, he does not contend that the events which transpired at the service station give rise to a § 1983 action. He recognizes that *Warren v. Cummings*, 303 F.Supp. 803 (D.Colo. 1969) is at odds with such an argument. Rather, Lee contends that what subsequently happened at the police station involving Lyngholm and Officer Filsinger gives rise to his § 1983 claim. We disagree.

■ Although the color of state law requirement of § 1983 is perhaps typically met by action on the part of a state official, it is nonetheless well established that private individuals, in a proper case, can also be held liable under § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). However, in order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State. Application of this general rule to the instant case would mean, according to Lee, that Lyngholm and Filsinger were jointly engaged in the alleged constitutional deprivation, and that therefore both were acting under the color of state law. In thus arguing, Lee relies on *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

In *Lugar*, the Edmondson Oil Company sought, and obtained, under Virginia law, prejudgment attachment of property belonging to an alleged debtor of the company. The attachment was later dismissed when Edmondson failed to establish the statutory grounds for attachment. The alleged debtor then brought a § 1983 action

**2.** In Lyngholm's account of the conversation,  the words "citizen's arrest" were not used.

against Edmondson and its president alleging that in attaching his property they acted "jointly" with the State to deprive him of his property without due process of law. The district court and the Fourth Circuit Court of Appeals held that the action of Edmondson and its representative did not constitute state action as required by the Fourteenth Amendment and that the complaint therefore did not state a claim under § 1983.

The Supreme Court reversed the Court of Appeals in *Lugar,* and in so doing laid down a "two-part approach" to determine whether conduct allegedly depriving a party of his federal rights may be "fairly attributable" to a state and in this connection spoke at page 937, 102 S.Ct. at 2753–54 as follows:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

We do not believe that *Lugar* supports Lee's position. *Lugar* was concerned with prejudgment attachment obtained by a private party availing himself of state law and jointly acting with state officials. We are disinclined to apply *Lugar* to a fact situation where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant. The Court in *Lugar* in footnote 21 on page 939, 102 S.Ct. at 2755 commented, in this regard, as follows:

> Contrary to the suggestion of JUSTICE POWELL's dissent, we do not hold today that "a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Post,* at 951 [102 S.Ct. at 2761]. *The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment* (emphasis ours).

■ As indicated above, judgment was entered in favor of Lyngholm on Lee's § 1983 claim on motion for summary judgment, and not on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Pretrial discovery, which included depositions of all participants, indicated that there was no genuine issue of material fact. And, in our view, those undisputed facts established that Lyngholm really did nothing more than report what he deemed to be criminal activity to the proper authorities. While he was perhaps "insistent," Officer Filsinger made the decision as to whether Lee should be charged with any offense, and, if so, what offense should be charged. In this regard, Lyngholm wanted Lee charged with criminal trespass, but Filsinger rejected that suggestion and decided to file a lesser charge of disorderly conduct. There is no suggestion in the record before us that there was any prearrangement between Lyngholm and Filsinger, or that they were somehow acting as a team. As mentioned, Filsinger's motion for summary judgment on Lee's § 1983 claim was denied, and that phase of the case was heard by a jury which found for Filsinger. However, the district court did not err in granting Lyngholm's motion for summary judgment, as the record clearly indicates that Lyngholm was not himself a state actor nor was he acting under color of state law.

In support of our resolution of the matter, *see Benavidez v. Gunnell,* 722 F.2d 615 (10th Cir.1983), where we held that the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983. *See also, Cruz v. Donnelly,* 727 F.2d 79 (3d Cir.1984). In *Cruz,* a shopkeeper called police when he suspected a

person of shoplifting in his store, and, when the police arrived, the shopkeeper asked that the suspect be searched. The police did so and found nothing. The suspect then brought a civil rights action against the shopkeeper. The district court granted summary judgment for the shopkeeper, and the Third Circuit affirmed. On appeal, it was argued that the shopkeeper and the police "acted in concert" and that therefore the shopkeeper, as well as the police, acted under color of state law. The Third Circuit rejected this argument. In so doing, the Third Circuit discussed *Lugar*, and concluded that it did not control. The Third Circuit held that even though the shopkeeper asked the police to search the suspect, the decision to search was the decision of the police, and that the actions of the shopkeeper, vis-a-vis the actions of the police, were not under the color of law.

### Estes Park, Ault, Kappely

■ We find no error on the part of the district court in granting summary judgment in favor of Estes Park, Chief Ault, and Sergeant Kappely on Lee's § 1983 claim. Neither Chief Ault nor Sergeant Kappely saw or conversed with Lee on the day in question. Officer Filsinger was the only officer involved with Lee and Lyngholm. Lee's § 1983 claim against Kappely is based on the fact that the latter in a supervisory capacity read and initialed Officer Filsinger's "incident report." We find no nexus between Kappely's action and

Lee's claimed deprivation of federal rights.[3]

■ Lee's § 1983 claim against Estes Park and Chief Ault is premised on the allegedly inadequate training of Officer Filsinger, who, if he had been properly trained, would, under Lee's reasoning, have acted differently at the station house when Lyngholm brought Lee to the station house on a citizen's arrest. The connection between the allegedly inadequate training and the claimed injury is not apparent to us.[4]

### Filsinger

As stated, Lee's § 1983 claim and pendant claims for false arrest and false imprisonment against Officer Filsinger were tried to a jury, which found in favor of Filsinger. On appeal, Lee complains about instructions given the jury on "good faith" as a defense and the definition of "trespass." At trial, there was a dispute as to whether Lee was, or was not, trespassing on Lyngholm's premises. We are not persuaded that either of the instructions here complained about is an incorrect statement of the law, and we perceive no reversible error.

Lee also complains that he was forced to trial with only one defendant, Filsinger, and that he should have been allowed to proceed to trial against all defendants named in the complaint. However, as indicated, Estes Park, Ault, Kappely, and Lyn-

---

3. The plain language of § 1983 requires that causation be established before liability can attach, 42 U.S.C. § 1983, and it is a necessary element of any § 1983 claim. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433–34, 85 L.Ed.2d 791 (1985). Here, whatever injury Lee may have suffered was complete by the time Filsinger's Incident Report reached Kappely.

4. Lee's inadequate training claim is based on this single incident. In order to hold Estes Park liable under § 1983, Lee must establish the existence of a municipal policy that caused the alleged deprivation of federal rights. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This municipal policy must be the result of "a deliberate choice to follow a course of action ... made from among various alternatives...."

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Here, Lee has made no showing of any policy whatever with respect to inadequately training police officers in handling citizens' arrests on the part of Chief Ault or Estes Park, beyond this single incident of allegedly unconstitutional conduct. The district court found that no such policy of inadequate training exists, and we see no reason to disturb this ruling. In support thereof, *see Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1312 n. 5 (10th Cir.1986), where we observed that "a single incident of unconstitutional conduct will not support a finding of a municipal policy." Finally, in the absence of any participation on Chief Ault's part in the events, in the absence of a "policy," and in the absence of any showing of negligence, there is no basis for § 1983 liability against Chief Ault.

gholm were properly dismissed from the case prior to trial.

Judgment affirmed.