**Loretta FRASER, Plaintiff,**

v.

**COUNTY OF MAUI, et al., Defendants.**

Civ. No. 92–00635 ACK.

United States District Court,
D. Hawaiʻi.

June 7, 1994.

Anthony L. Ranken, Wailuku, HI, for Loretta Fraser.

Guy A. Haywood, David M. Jorgensen, Corp. Counsel, City & County of Maui, Wailuku, Maui, HI, for County of Maui, Maui County Police Dept., Wendell Loo.

Gregory K. Markham, Peter Y.L. Pong, Chee & Markham, Honolulu, HI, Paul R. Dolan, Lahaina, Maui, HI, for David Firestine, Napili Ridge Ass'n of Apartment Owners.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KAY, Chief Judge.

## I. BACKGROUND

On September 30, 1992, Plaintiff Loretta Fraser ("Plaintiff") filed a complaint against Defendants Wendell Loo ("Loo"), County of Maui ("County"), David Firestine ("Firestine"), and Napili Ridge Association of Apartment Owners ("Napili Ridge"), asserting federal causes of action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and state causes of action under false imprisonment, malicious prosecution, and intentional and negligent infliction of emotional distress. Against Napili Ridge, Plaintiff also asserts state negligent employment and supervision claims. Finally, Plaintiff seeks punitive damages.

On March 15, 1994, Defendants Loo and County filed a motion for summary judgment on each of Plaintiff's causes of action against them. Also on March 15, 1994, Defendants Firestine and Napili Ridge filed a separate motion for summary judgment on each of the claims against them. On April 29, 1994, Plaintiff filed a late opposition to the motions for summary judgment.

For the reasons stated below, the Court hereby GRANTS both motions for summary judgment.

## II. *FACTS*

This action arises out of the citizen's arrest of Plaintiff by Firestine on January 23, 1992. Firestine arrested Plaintiff for harassing him. At the time of the arrest, Firestine was the Resident Manager of the condominium complex in which Plaintiff lived. Unhappy with his work, Plaintiff began conducting an informal surveillance of Firestine's job performance. Plaintiff then complained about his performance to the complex's board, of which Plaintiff was a member, and asked that Firestine be fired. The other board members disagreed with Plaintiff's assessment of Firestine's performance and refused to fire him. As a result, Plaintiff began an intensive surveillance of Firestine's activities. For a 3½–day period, she followed Firestine around during his job and took notes of his activities. Frustrated, Firestine called the Maui Police Department after the first day of Plaintiff's surveillance and complained to the police about her behavior. Loo was the officer responding to Firestine's complaint.

Loo's affidavit testimony reveals the following about the events leading to Plaintiff's arrest:

Firestine· called the Maui Police Department on January 20, 1992 to complain about Plaintiff's conduct. Firestine complained that Plaintiff was following him, sometimes as close as 10 feet behind him, and that she was writing down everything he did. Furthermore, when Firestine entered his apartment, Plaintiff waited outside watching what he was doing inside. Loo arrived at the scene to investigate the complaint. He spoke with both Plaintiff and Firestine. Plaintiff told Loo that she had a right to follow Firestine because she was a member of the condominium complex's board and it was her job to make sure Firestine was doing his job as Resident Manager. Loo told Plaintiff she could not follow Firestine if it was interfering with his work and annoying him, because the situation could escalate to a confrontation. Plaintiff then told Loo she would follow Firestine at a distance so as not to bother him

or interfere with his work. Loo spoke with Firestine to be sure Firestine was satisfied with this resolution. Firestine stated he did not want to pursue the matter further. He did, however, tell Loo that Plaintiff was no longer a member of the board.

Early in the morning of January 23, 1992, Firestine again called the Maui Police Department to again complain about Plaintiff's surveillance. Loo went to the complex and saw Plaintiff standing at the bottom of the stairs leading to Firestine's apartment. Firestine was in his apartment. Loo spoke with Firestine, who told him that Plaintiff continued to follow him and that he was getting angry and was liable to hit Plaintiff if she did not stop. Loo talked to Plaintiff and told her he believed she was harassing Firestine and that she could be arrested. Plaintiff stated that she did not believe she was doing anything wrong, but that she would leave the area. Firestine then told Loo that, as long as Plaintiff left him alone, he did not wish to pursue prosecution.

Loo returned to the police station and discussed the situation with his supervisor. They decided that Plaintiff's conduct came within Haw.Rev.Stat. § 711–1106, dealing with the criminal offense of harassment. Later in the morning of January 23, 1992, Loo was again dispatched to the complex to investigate another complaint from Firestine. Upon arriving, Loo saw Plaintiff sitting on the lawn outside Firestine's office. She was surrounded by several tenants, who were telling her to leave Firestine alone. Firestine told Loo that, after Loo left, Plaintiff came back and told Firestine she was going to continue her surveillance. Loo approached Plaintiff, gave her a copy of § 711–1106, and told her she was violating this code section. Firestine then arrested Plaintiff.

To controvert the defendants' evidence, Plaintiff submits her response to an interrogatory asking her to detail her contact with Firestine and also submits portions of her deposition testimony. Plaintiff's evidence does not materially dispute the evidence offered by Loo. In her interrogatory answer, she states that Loo arrived at the scene on January 20, 1992 at about 2:30 p.m., that they spoke and that they agreed that Plaintiff could observe Firestine from a distance. She

states that Loo went to Firestine's apartment and spoke with Firestine. She did not hear the conversation between the two. Plaintiff also discusses the arrest on January 23, 1992. She states that Loo told her she was under arrest for the offense of harassment and that she informed Loo that she disagreed with him. Plaintiff's description of the arrest in the interrogatory answer is similar to her description in the deposition testimony. In her interrogatory answer and her deposition testimony, Plaintiff does not address whether Loo spoke with her an additional time on the morning of January 23, 1992 before the arrest took place. Thus, her evidence does not controvert Loo's affidavit testimony regarding the additional conversation. Moreover, Plaintiff's affidavit testimony does not controvert Loo's testimony with regard to the conversations he had with Firestine and with regard to the knowledge he gained from those conversations.

### III. STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his or her case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue

for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

### IV. DISCUSSION

#### A. FEDERAL CLAIMS

##### 1. § 1985 Claim

Defendants assert that Plaintiff cannot meet her burden on summary judgment with

regard to her claim under 42 U.S.C. § 1985 that they entered into a conspiracy to violate her civil rights. In her opposition, Plaintiff agrees. Hence, the Court GRANTS summary judgment in favor of defendants on Plaintiff's claim that defendants conspired to violate her civil rights.

### 2. § 1983 Claim

In her complaint, Plaintiff asserts that both Firestine and Loo unlawfully arrested her. She claims the arrest was made without probable cause. An arrest without probable cause violates the Fourth Amendment and gives rise to a cause of action for damages under 42 U.S.C. § 1983.[1] *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir.1984).

The Court now separately examines whether Plaintiff has met her summary judgment burden with regard to the § 1983 claims against each of the defendants.

#### a. Defendant Loo

Plaintiff argues that both Firestine and Loo unlawfully arrested her. Defendants Loo and County maintain that Firestine, not Loo, arrested Plaintiff. Nevertheless, they maintain that, assuming *arguendo* that Loo did arrest Plaintiff, Loo is protected by qualified immunity from liability for the alleged unlawful arrest because he had a reasonable belief that probable cause existed to arrest Plaintiff. He therefore seeks summary judgment on Plaintiff's § 1983 claim against him.

##### 1. Qualified immunity standards

■ When a police officer asserts qualified immunity from liability under § 1983 for an unlawful arrest, "the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). To resolve this issue, the district court must decide (1) whether the law governing the official's conduct was clearly established, and (2) whether, under the law, a reasonable officer could have believed the conduct was lawful. *Id.*

Neither party disputes that at the time Loo arrested Plaintiff clearly established constitutional law specified that, absent probable cause, Loo could not make a warrantless arrest of Plaintiff. *McKenzie*, 738 F.2d at 1007 (detailing that the Fourth Amendment prohibits arrests without probable cause) (citing *Beck v. Ohio*, 379 U.S. 89, 90–91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)); *see also* Haw.Rev.Stat. § 803–5(a) (1994) ("A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise."); *State of Hawaii v. Kapoi*, 64 Haw. 130, 136, 637 P.2d 1105, 1110–11 (1981) (holding that, under § 803–5(a), police officers may make a warrantless arrest when circumstances give rise to a reasonable belief that the person committed the offense). The dispute here focuses on the second part of the qualified immunity inquiry: Whether, under the law, a reasonable officer could have believed that Loo had probable cause to arrest Plaintiff.

■ The Ninth Circuit holds that, with regard to the qualified immunity inquiry, "[t]he determination of whether the facts alleged could support a reasonable belief in the existence of probable cause ... is ... a question of law to be determined by the court." *Act Up!/Portland*, 988 F.2d at 873. The determination of probable cause "requires an inquiry as to the facts and circumstances within an officer's knowledge," *id.* (citing *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986)), and an inquiry into "what the officer and claimant did or failed to do," *id.* When the facts underlying these inquiries are in dispute, then it is for the jury to resolve the factual dispute so that the district court may decide "whether those facts support an objec-

---

1. In pertinent part, 42 U.S.C. § 1983 provides: "Every person who, under color of [state law], subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

tive belief that probable cause ... existed." *Id.* If the facts are not in dispute, however, the district court is to resolve all the issues relating to whether qualified immunity applies. *Id.*

### 2. *Probable cause standards*

"The test for probable cause is whether 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] ... that the suspect has committed, is committing or is about to commit an offense.'" *United States v. Greene,* 783 F.2d at 1367 (quoting *Michigan v. De Fillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)); *see also* Haw.Rev.Stat. § 803–5(b) (1994) (providing that probable cause exists if the "facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been committed or is being committed.").

Plaintiff was arrested for allegedly committing the act of harassment under Haw. Rev.Stat. § 711–1106. At the time of Plaintiff's arrest, § 711–1106 provided in pertinent part that:

> (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, that person:
>
> . . . . .
>
> (b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response ...;

Haw.Rev.Stat. § 711–1106 (1985).[2]

If Loo had probable cause, or a reasonable belief that probable cause existed, to arrest Plaintiff under § 711–1106, then he is shielded from liability. As discussed in detail be-

low, this Court finds that probable cause did exist and that a reasonable police officer would have believed that probable caused existed. This Court therefore GRANTS summary judgment on Plaintiff's § 1983 claim against Loo.

### 3. *The merits*

■ As an initial matter, this Court addresses Plaintiff's contention that Loo cannot satisfy a necessary element of § 711–1106(1)(b). Plaintiff contends that she spoke with Firestine only once over the 3½–day period in dispute, to tell him that he was disposing of dog feces in an unsanitary fashion. She argues that, because she did not speak to Firestine, she did not insult, taunt or challenge Firestine, as required by § 711–1106(1)(b). The Hawaii courts have held that with regard to § 711–1106(1)(b) "[w]ords and hand gestures are not essential elements of the crime of harassment." *In re John Doe,* 7 Haw.App. 582, 584, 788 P.2d 173, 175 (1990). Thus, the mere fact that Plaintiff did not speak to Firestine does not mean she did not taunt, insult, or challenge him. As shown below, this Court finds Loo had reason to believe that Plaintiff challenged Firestine in a manner likely to provoke a violent response.

■ The undisputed facts in this case show that probable cause existed to arrest Plaintiff for harassment under § 711–1106(1)(b) in that a person of reasonable caution would have believed Plaintiff challenged Firestine in a manner likely to provoke a violent response in Firestine. Plaintiff's continual surveillance of Firestine for 3½ days before her arrest was done for the expressed purpose of finding ways in which Firestine's job performance was lacking. In essence, Plaintiff was challenging Firestine's ability to perform his job.[3] The manner in

---

**2.** On June 29, 1992, § 711–1106 was amended to include the following: "A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, that person ... [m]akes repeated communications, after being advised by the person to whom the communication is directed that further communication is unwelcome." Haw.Rev.Stat. § 711–1106(1)(e) (1994); 1992 Session Laws of Hawaii 752, 753. While this subsection would appear to be factually applicable to the case at bar, it does not play a

part in this Court's analysis because the Hawaii legislature did not adopt it until after Plaintiff's arrest. 1992 Session Laws of Hawaii at 753 ("The Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date.").

**3.** This was not the first time Plaintiff had made such a challenge regarding a Resident Manager's job performance. She had been instrumental in

which Plaintiff expressed her challenge was likely to provoke a violent response from Firestine. Plaintiff followed Firestine for 3½ consecutive days, watched his job performance and other activities, and took notes. Plaintiff presents no evidence that Firestine had received notification from his employers that his job performance would be under surveillance by Plaintiff. In fact, Plaintiff's own deposition testimony indicates that Firestine's employers did not sanction Plaintiff's surveillance in that Firestine's supervisor, the assistant manager at Napili Ridge, called Plaintiff's husband and told him that Plaintiff could not continue her surveillance. Furthermore, Firestine was aware of Plaintiff's surveillance and found it so intrusive that he contacted the police on three separate occasions in an effort to get Plaintiff to stop. Firestine told Loo that he was becoming so annoyed that he might hit Plaintiff if she did not stop.[4]

Based on the foregoing, this Court finds that Loo had probable cause to arrest Plaintiff for harassment under § 711–1106, and therefore did not unlawfully arrest Plaintiff. Furthermore, the Court also specifically finds that, from the evidence detailed above, a reasonable police officer would have believed that probable cause existed, and therefore Loo is protected from liability under the doctrine of qualified immunity. Consequently, the Court GRANTS summary judgment as to Plaintiff's § 1983 claim against Loo.

### b. *Defendant County*

■Because this Court has found that Loo did not unlawfully arrest Plaintiff, the County cannot be liable to Plaintiff. In *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), the Supreme Court stated that "neither *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its

officers when in fact ... the officer inflicted no constitutional harm." *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573. Hence, the Court GRANTS summary judgment on Plaintiff's § 1983 claim against the County.

### c. *Defendant Firestine*

■ Defendants Firestine and Napili Ridge contend that, if summary judgment on Plaintiff's § 1985 conspiracy claim is granted in their favor, then summary judgment on Plaintiff's "constitutional tort claim" must also be granted in their favor because any constitutional tort separate and apart from the § 1985 claim has no basis in the law. The Court disagrees. Plaintiff has a potentially viable § 1983 claim against Firestine and Napili Ridge if she is able to establish the elements of such a claim. Consequently, before this Court may grant summary judgment on the § 1983 claim against these defendants, it must consider the merits of the claim.

"A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (*i.e.,* state action), and (2) the conduct must deprive the plaintiff of a constitutional right." *Ketchum v. Alameda County,* 811 F.2d 1243, 1245 (9th Cir.1987); *Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir. 1992). As to Plaintiff's § 1983 claim against Firestine, the Court examines whether Plaintiff has satisfied the necessary elements for the purposes of summary judgment.

### 1. *State action*

■ In determining whether a private party's actions constitute "state action" under the Fourteenth Amendment, courts must inquire into whether the party's actions may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). This determination involves a two-part analysis: "First, the deprivation must be caused by the exercise of some right or privilege created by

---

the firing of Firestine's predecessor because of the predecessor's allegedly poor job performance.

4. Supporting the contention that Firestine was becoming increasingly upset with Plaintiff is

Plaintiff's deposition testimony that, at one point during her surveillance, Firestine removed her furniture from the complex's storage area and threw it out.

the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.; Pinhas v. Summit Health, Ltd.,* 894 F.2d 1024, 1033 (9th Cir.1989) (quoting *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753), *cert. granted in part,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660, *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 36 (1990), *aff'd,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991). The two elements of the *Lugar* test have been labelled the "state policy" and the "state actor" requirements, respectively. *Collins v. Womancare,* 878 F.2d 1145, 1151 (9th Cir.1989) (citing *Roudybush v. Zabel,* 813 F.2d 173, 176 (8th Cir. 1987)), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

Below the Court first discusses the state actor requirement and then discusses the state policy requirement.

### a. *State actor*

#### 1. *Legal standards*

 In determining whether the state actor requirement has been met with regard to a citizen's arrest, courts must "examine[ ] all the circumstances surrounding the challenged action 'in their totality.'" *Collins,* 878 F.2d at 1150 (citations omitted). State action is present in citizen's arrests "where a private party is 'a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" *Id.* at 1154 (citations omitted). The inquiry into whether private persons are jointly engaged with state officials "focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" *Gorenc v. Salt River Project Agric. Improvement & Power Dist.,* 869 F.2d 503, 507 (9th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989). Thus, joint

action requires a substantial degree of cooperative action between the state officials and the private persons. *Collins,* 878 F.2d at 1154. For example, in *Howerton v. Gabica,* a non-citizen's arrest case, the Ninth Circuit concluded that the record showed state action where police officers "were on the scene at each step of the eviction" and a police officer visited the tenants on his own initiative to warn them to leave. 708 F.2d 380, 384 (9th Cir.1983).

Few cases have addressed the issue of whether sufficient cooperative action exists in the context of a citizen's arrest. This Court's research has revealed only six cases. *See Collins,* 878 F.2d 1145; *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402 (10th Cir.1987); *Lee v. Town of Estes Park,* 820 F.2d 1112 (10th Cir.1987); *Warren v. Cummings,* 303 F.Supp. 803 (D.Colo.1969); *Shakespeare v. Wilson,* 40 F.R.D. 500 (S.D.Cal.1966); *Bryant v. Donnell,* 239 F.Supp. 681 (W.D.Tenn.1965). All of these cases held that a citizen's arrest did not constitute state action, and therefore necessarily found insufficient cooperative action between the private persons and police officers. The Ninth Circuit however recently held in a non-citizen's arrest case that, for the purposes of imposing § 1983 liability on defendant-private citizens, genuine issues of fact existed regarding state action where the private citizens filled out the citizen's complaint that formed a basis of the arrest upon the advice of police officers. *Sloman v. Tadlock,* 21 F.3d 1462 (9th Cir. 1994). This case supports a ruling that state action may exist where the private citizen makes a citizen's arrest upon the advice of police officers.[5]

 While filling out a citizen's complaint form or making a citizen's arrest upon the advice of the police may constitute sufficient cooperative action, merely complaining to the police does not. *Collins,* 878 F.2d at 1155. Nor is the execution by a private party of a sworn complaint that forms the basis of the arrest sufficient when no evidence exists showing the execution was done

---

5. This ruling is also supported by the Ninth Circuit's unpublished disposition in *Zimmerman v. Nakatani,* 951 F.2d 365 (9th Cir.1991). In *Zimmerman,* the Ninth Circuit held that the evidence there created genuine issues of fact regarding state action because it suggested the private persons making the citizen's arrest did so upon the advice of police officers. *Id.*

as a result of the police's advice. *Id.* In *Collins*, the Ninth Circuit found *Carey* and *Lee*, the two Tenth Circuit cases dealing with citizen's arrests in the § 1983 context, useful in determining when a citizen's arrest becomes state action. *Collins*, 878 F.2d at 1155. In *Lee*, the Tenth Circuit found no joint action even though the private party arrested the plaintiff, transported the plaintiff to the police station, persuaded the police to file charges, and swore out a complaint against the plaintiff. *Lee*, 820 F.2d at 1114–15. Similarly, in *Carey*, the Tenth Circuit found no state action when Continental's airport manager called airport security, helped escort plaintiff to the security station and signed a complaint charging him with trespass. *Carey*, 823 F.2d at 1404. In *Collins* itself, the Ninth Circuit concluded that no state action existed where the impetus for the arrest came from the private entity and not the police officer, the police officer discouraged the arrest by warning about potential civil liability for false arrest, the police officer refused to make the arrest on his own authority after conducting an independent investigation, and the police officer maintained a policy of neutrality in the dispute between the private parties. *Collins*, 878 F.2d at 1154–56.

With these principles in mind, this Court now examines the circumstances in this case to determine whether, for state action purposes, Firestine engaged in sufficient cooperative action with Loo when making the citizen's arrest.

### 2. *The merits*

■ As Exhibit A to their motion, the County Defendants provide a copy of a document entitled "Certificate of Citizen's Arrest." The certificate contains Firestine's signature and indicates that Firestine made a citizen's arrest of Plaintiff for harassment. This evidence supports a finding that Firestine made a citizen's arrest of Plaintiff.

■ Also, according to Loo's affidavit testimony, on January 21, 1992, he told Plaintiff she could not follow Firestine around the property if it interfered with his work and annoyed him because a confrontation could result; in the morning of January 23, 1992, he told Plaintiff that her actions were a form of harassment and constituted a criminal offense and that she could be arrested; also in the morning on January 23, 1992, Loo discussed the situation with his supervisor at the police station and they agreed that Plaintiff's action could constitute harassment under Haw.Rev.Stat. § 711–1106; and finally, again in the morning on January 23, 1992, Loo informed Firestine about the offense of harassment, gave him a copy of § 711–1106, and advised him about the procedures for making a citizen's arrest. From this evidence, a jury could find that Loo and Firestine engaged in substantial cooperative action to arrest Plaintiff, and therefore the Court holds that a genuine issue of fact exists with regard to the state actor inquiry.

### b. *State policy*

■ The first element of *Lugar*, the state policy requirement, has been satisfied for summary judgment purposes. The evidence reviewed in the preceding section supports a jury finding that, upon Loo's advice, Firestine exercised his right under state law, Haw. Rev.Stat. 803–3,[6] to make a citizen's arrest.

The Court turns to the issue of whether Plaintiff has put forth sufficient evidence to establish for summary judgment purposes that Firestine deprived her of her constitutional rights.

### 2. *Constitutional deprivation*

■ Plaintiff claims Firestine violated her Fourth Amendment rights by unlawfully arresting her. This Court has found no cases describing how a private citizen may violate the Fourth Amendment for § 1983 purposes. Consequently, in determining whether Firestine, a private citizen, is liable under § 1983 for Plaintiff's alleged unlawful arrest, this Court looks to common-law prin-

---

6. "Anyone in the act of committing a crime, may be arrested by any person present, without a warrant." Haw.Rev.Stat. § 803–3 (1994). The Hawaii Supreme Court has held that this statute "presumably sanctions 'citizen's arrests,' an ar-chaic process of common law origin which has been part of our statutory law of arrests since 1869." *State v. Kapoi*, 64 Haw. 130, 135, 637 P.2d 1105, 1110 (1981).

ciples governing false imprisonment and malicious prosecution.

In *Cameron v. Fogarty*, the Second Circuit looked to common-law principles governing false imprisonment and malicious prosecution to determine whether a § 1983 unlawful arrest action could be maintained if the arrest was followed by a conviction. 806 F.2d 380, 386 (2nd Cir.1986) ("Our review of common-law principles with respect to arrest reveals that an action for arrest without probable cause, sometimes colloquially called an action for "false arrest," would be analyzed as a claim either for false imprisonment or for malicious prosecution."), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). The *Cameron* Court held that such a § 1983 claim could not be maintained. *Id.* at 386–88. In support of its decision to look to common-law principles, *Cameron* relied on *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), wherein the Supreme Court stated that "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions,'" and on several other Supreme Court decisions that analyzed common-law principles to determine § 1983 immunity issues. *Cameron,* 806 F.2d at 386 (quoting *Pierson,* 386 U.S. at 556, 87 S.Ct. at 1218) (citing *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (common-law principles dealing with immunity of judges and law enforcement officials); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–68, 101 S.Ct. 2748, 2755–60, 69 L.Ed.2d 616 (1981) (common-law principles dealing with immunity of municipal corporation from punitive damages); *Procunier v. Navarette,* 434 U.S. 555, 561–63, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978) (common-law principles dealing with immunity of prison officials for good faith actions); *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976) (common-law principles dealing with immunity of public prosecutors in initiating or prosecuting the state's case); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974) (common-law principles dealing with immunity of state executive officials for discretionary acts)) (quoting *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980) ("Where the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity.")).

 While courts have criticized *Cameron* for its holding that § 1983 actions for unlawful arrest cannot be maintained if the arrest was followed by a conviction, *see, e.g., Rose v. Bartle,* 871 F.2d 331, 350–51 (3d Cir.1989), this Court has found no case criticizing *Cameron* for looking to common-law principles for guidance in determining whether liability could be established under § 1983. Hence, in determining Firestine's liability, this Court will apply the common-law principles governing the torts of false imprisonment and malicious prosecution to the extent that these principles are not inconsistent with the legislative intent of § 1983.

### a. *False imprisonment*

 Under Hawaii tort law, to maintain an action for false arrest or false imprisonment a plaintiff must show (1) the detention or restraint of one against one's will, and (2) the unlawfulness of such detention or restraint. *Meyer v. City & County of Honolulu,* 6 Haw.App. 505, 508, 729 P.2d 388, 391, *rev'd on other grounds,* 69 Haw. 8, 731 P.2d 149 (1986). Probable cause is an affirmative defense to the claim of false imprisonment, *Lopez v. Wigwam Dep't Stores,* 49 Haw. 416, 423, 421 P.2d 289, 293–94 (1966). The defense applies to both police officers, *House v. Ane,* 56 Haw. 383, 390–91, 538 P.2d 320, 325–26 (1975), and private citizens, *see Lopez,* 49 Haw. at 423, 421 P.2d at 293–94.

In ruling that probable cause is an affirmative defense in false imprisonment actions against private citizens, the Court notes that conflicting authority exists on the issue. If however a private person, by statutory authority or otherwise, is permitted to make a citizen's arrest only when the offense is actually being committed in that person's presence, cases generally hold that probable cause is not a defense to a false imprisonment action against the person. *See Collyer*

*v. S.H. Kress Co.*, 5 Cal.2d 175, 180, 54 P.2d 20, 23 (1936). If a private person is authorized to make a citizen's arrest upon reasonable grounds to believe an offense is being committed, cases generally hold that probable cause is a defense. *See id.*

The Hawaii statute at issue here appears to fall within the first category of authority, permitting arrest only when the offense is actually committed in the person's presence: "Anyone in the act of committing a crime, may be arrested by any person present, without a warrant." Haw.Rev.Stat. § 803–3 (1994). Thus, if Hawaii case law had been completely silent on the issue, this Court would most likely have found that probable cause is not a defense to the false imprisonment action here. Hawaii case law, however, is not completely silent. *Lopez v. Wigwam Department Stores* indicates that the Hawaii Supreme Court applies the affirmative defense to arrests by private citizens. 49 Haw. 416, 421 P.2d 289.

 In *Lopez*, employees of the defendant-department store detained plaintiff because they believed she had shoplifted a jacket from the store. The plaintiff was arrested and charged by the police, but was eventually acquitted of the shoplifting charge. Subsequently, plaintiff brought an action asserting malicious prosecution and false imprisonment against the department store and its employees. On the issue of whether probable cause was a defense to the false imprisonment claim there, the Hawaii Supreme Court stated: "Defendants admitted during argument that probable cause is an affirmative defense to a claim for false imprisonment, and was not raised in time to put before the jury the matter of the reasonableness of the detention, that is, whether the detention was entirely a detention for investigation in protection of Wigwam's rights." 49 Haw. at 423, 421 P.2d at 293–94. This statement implies that the Hawaii Supreme Court would have considered the defense of probable cause had defendants properly preserved their objection, and therefore implies that in Hawaii probable cause is a defense to false imprisonment actions against private persons. Consequently, this Court relies on *Lopez* to hold that, under Hawaii law, probable cause is an affirmative defense to a false imprisonment action against a private person. This holding is supported by the Hawaii Supreme Court's reliance on *Lopez* in *House v. Ane* to rule that probable cause is an affirmative defense to a false arrest action against police officers. *House,* 56 Haw. 383, 538 P.2d 320. In *House,* the Hawaii Supreme Court stated: "We stated in *Lopez v. Wigwam Dept. Stores,* 49 Haw. 416, 421 P.2d 289 (1966), that probable cause is an affirmative defense to a claim for false imprisonment."

 This Court applies Hawaii law providing that probable cause is a defense to false imprisonment actions against private persons because it finds that such a holding is not inconsistent with the legislative intent of § 1983. Congress did not intend to abolish all common-law immunities and defenses in § 1983 litigation. *Pierson v. Ray,* 386 U.S. at 554, 87 S.Ct. at 1217. As stated in *City of Newport v. Fact Concerts,* an "important assumption underlying the [United States Supreme] Court's decisions in [§ 1983 litigation] is that members of the 42d Congress were familiar with common-law principles, including defenses previously recognized in ordinary tort litigation, and that they likely intended these common-law principles to obtain, absent specific provision to the contrary." 453 U.S. at 258, 101 S.Ct. at 2755. This Court has found no specific provision preventing application of the defense of probable cause to false imprisonment actions against private persons.

 Applying these principles to the case at bar, this Court finds the undisputed facts discussed in connection with the issue of whether Loo had probable cause to arrest Plaintiff show that Firestine also had probable cause to arrest her. Plaintiff challenged Firestine's ability to perform his job when she conducted a surveillance of his activities for 3½ consecutive days. Her surveillance was likely to provoke a violent response in Firestine, as shown by the facts that Firestine called the police to get Plaintiff to stop her surveillance, he threw away her furniture to retaliate against her, and he told Loo he thought he might hit her if she did not stop. Given these undisputed facts, a person of reasonable caution would have believed

Plaintiff challenged Firestine in a manner likely to provoke a violent response in Firestine.

Moreover, Firestine's evidence indicates that Loo advised him that he could make a citizen's arrest of Plaintiff under § 711–1106. Plaintiff does not controvert this evidence. Because Plaintiff has presented no evidence showing that Firestine had some reason to doubt Loo's advice,[7] this Court finds that, under the facts and circumstances known to Firestine, in particular, Loo's advice, a person of reasonable caution would believe Plaintiff was committing an offense.

Plaintiff cannot sustain a false imprisonment claim against Firestine.

### b. *Malicious prosecution*

 To establish a malicious prosecution claim, Plaintiff must prove that (1) the prior proceedings were terminated in Plaintiff's favor, (2) the prior proceedings were initiated without probable cause, and (3) the prior proceedings were initiated with malice. *Myers v. Cohen,* 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984). This Court has found that Firestine had probable cause to arrest Plaintiff for harassment, and therefore Plaintiff cannot sustain a malicious prosecution claim against Firestine. Even if the Court had not specifically found that probable cause existed, it would find that Plaintiff could not sustain a malicious prosecution claim.

 Implied in the elements of a malicious prosecution claim is the requirement that Plaintiff show prior proceedings were initiated. Plaintiff has failed to satisfy this requirement. *See* Restatement (Second) Tort § 654 (1977) [hereinafter "Restatement § ——"].

Restatement § 654 provides:

(1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.

(2) Criminal proceedings are instituted when

(a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or

(b) without the issuance of process an indictment is returned or an information filed against him; or

(c) he is lawfully arrested on a criminal charge.

 Plaintiff has presented no evidence that she was brought before an official or tribunal whose function is to determine whether she was guilty of harassment or whether she would be held for a later determination of guilt or innocence. Consequently, Restatement § 654(2)(a) does not apply here. Additionally, Plaintiff has presented no evidence that an indictment or information was filed against her, and therefore Restatement § 654(2)(b) also does not apply here.

 Thus, the only way Plaintiff can show prior proceedings were initiated is through Restatement § 654(2)(c). Under § 654(2)(c), Plaintiff must show she was lawfully arrested—i.e., that she was arrested with probable cause. On the one hand, if Plaintiff does not show she was arrested with probable cause, a malicious prosecution claim against Firestine will fail because she will be unable to establish that prior proceedings were initiated. On the other hand, if Plaintiff proves that she was arrested with probable cause and that criminal proceedings were therefore initiated, a malicious prosecution

---

**7.** In essence, Firestine would have reason to doubt Loo's advice if the facts known to Firestine would cause a person of reasonable caution to question whether Plaintiff was committing an offense. For example, if, given the facts known to Firestine, a reasonable person would have believed that Loo was wrong when he advised Firestine that Firestine could arrest Plaintiff for harassment under § 711–1106, then Firestine would have reason to doubt Loo's advice. Furthermore, Firestine would have reason to doubt Loo's advice if Firestine had made material misrepresentations or omissions to Loo about the events that had transpired between Plaintiff and Firestine, because Loo's advice would then have been based on faulty information and Firestine would have or should have known this. Plaintiff presents no evidence indicating that Firestine made material misrepresentations or omissions to Loo.

claim against Firestine will necessarily fail because she will not be able to establish the second element of such a claim—i.e., that the prior proceedings were initiated without probable cause. Plaintiff is in a catch–22. This catch–22 reveals that a plaintiff cannot pursue a malicious prosecution claim against the person making the arrest when the arrest was made with probable cause and no further proceedings occur after the arrest. This conclusion leads one to question when § 654(2)(c) might ever be used to establish a malicious prosecution claim. The comments to § 654 provide an illustration of such a circumstance:

> A, maliciously and without probable cause, informs a police officer that B has committed a felony. Acting on this information, the officer makes a valid arrest of B. He then discovers that B is innocent and releases him without any further steps to prosecute him. A is subject to liability to B for malicious prosecution.

Restatement § 654 cmt. e. The facts in the case at bar do not conform with this illustration.

As shown above, no matter what the resolution of any factual disputes regarding the malicious prosecution claim might be, Plaintiff cannot legally prevail under such a claim.

### c. *Conclusion*

Plaintiff cannot sustain either a false imprisonment or malicious prosecution action against Firestine. Consequently, the Court GRANTS summary judgment on Plaintiff's § 1983 claim against Firestine.

### d. *Defendant Napili Ridge*

Plaintiff's § 1983 claim against Napili Ridge appears to be based upon respondeat superior liability. The Ninth Circuit has found that the theory of respondeat superior does not apply to § 1983 claims, stating:

> A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983. *Ybarra v. Reno Thunderbird Mo-*

*bile Home Village,* 723 F.2d 675, 680–81 (9th Cir.1984).

*Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Plaintiff has made no showing that Napili Ridge participated in or directed the citizen's arrest. Plaintiff has also made no showing that Napili Ridge knew of the citizen's arrest and failed to act to prevent it. Moreover, Plaintiff has made no showing that Napili Ridge failed to properly train or supervise Firestine or that it permitted a custom or policy of unlawful arrests by its employees. *See Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir.1984) (finding no evidence supports imposition of liability on supervisor for failing to train subordinate or for permitting custom or policy violating plaintiff's constitutional rights). Thus, Plaintiff has failed to show that Napili Ridge directly caused her citizen's arrest, and therefore this Court GRANTS summary judgment on the § 1983 claim against Napili Ridge. Furthermore, even if Plaintiff had made some showing that Napili Ridge directly caused the citizen's arrest, Napili Ridge would not be liable to Plaintiff because, in light of this Court's ruling that the arrest was lawful, Napili Ridge could not have inflicted a constitutional harm on Plaintiff.

The Court finally notes that, even if the theory of respondeat superior applied to the § 1983 claim against Napili Ridge, it would still grant summary judgment in Napili Ridge's favor. Under the common-law doctrine of respondeat superior, the employer is held accountable and liable for the employee's negligent acts that are committed within the scope of employment. *Henderson v. Professional Coatings Corp.,* 72 Haw. 387, 391, 819 P.2d 84, 88 (1991). In the context of § 1983 liability, the employer would be held accountable and liable for the employee's acts within the scope of employment that violate another's constitutional rights. Even assuming *arguendo* that Firestine's arrest of Plaintiff was within the scope of his employment, this Court would find Napili Ridge not liable under respondeat superior because it has already found that Firestine did not unlawfully arrest Plaintiff, and therefore did not violate Plaintiff's constitutional rights. As Firestine inflicted no con-

stitutional harm on Plaintiff, Napili Ridge cannot be held liable to Plaintiff under a respondeat superior theory.

## B. *STATE CLAIMS*

### 1. *False Imprisonment and Malicious Prosecution*

As detailed above, for Plaintiff to prevail on her state-law false imprisonment and malicious prosecution claims, she must show that no probable cause existed to arrest her. *See Lopez v. Wigwam Dep't Stores,* 49 Haw. 416, 423, 421 P.2d 289, 293–94 (1966) (false imprisonment); *Myers v. Cohen,* 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984) (malicious prosecution). As discussed previously, this Court has found that both Loo and Firestine had probable cause to arrest Plaintiff. Thus, the Court GRANTS summary judgment in favor of defendants on Plaintiff's malicious prosecution claim.

### 2. *Intentional Infliction of Emotional Distress*

In order to prove a case for intentional infliction of emotional distress, in the absence of any physical injury, Plaintiff must demonstrate (1) that the act was intentional; (2) that it was unreasonable; and (3) that the actor should have recognized it as likely to result in illness. *Fraser v. Morrison,* 39 Haw. 370 (1952); *see also Wong v. Panis,* 7 Haw.App. 414, 772 P.2d 695, 700 (1989). The term "unreasonable" can be equated with the phrase "without just cause or excuse and beyond all bounds of decency" and with the word "outrageous." *Lapinad v. Pacific Oldmobile–GMC, Inc.,* 679 F.Supp. 991, 995 (D.Haw.1988) (citing *Chedester v. Stecker,* 64 Haw. 464, 643 P.2d 532 (1982)). It is for the court to initially determine whether the actions of the alleged tortfeasor are unreasonable or outrageous, although if the court finds that reasonable persons could differ on that issue, it should be left to the jury. *Wong,* 7 Haw.App. at 421–22, 772 P.2d at 700–01.

The standard for determining if a claim has been properly alleged for intentional infliction of emotional distress is as follows:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized as "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement § 46, cmt. d; *see also Wong,* 7 Haw.App. at 421, 772 P.2d at 700.

The facts of this case cannot be said to rise to the level of outrageousness required to establish a claim of intentional infliction of emotional distress. Plaintiff claims her arrest constitutes grounds for recovery. As this Court has already held that Defendants Loo and Firestine had probable cause to arrest Plaintiff and that Plaintiff cannot establish a claim for malicious prosecution, it is difficult to imagine how the defendants' conduct could be called outrageous or unreasonable. The actions taken by the defendants were legally justified, and cannot be said to constitute grounds for recovery.

The Court GRANTS summary judgment in favor of defendants on Plaintiff's intentional infliction of emotional distress cause of action.

### 3. *Negligent Infliction of Emotional Distress*

Hawaii recognizes an independent tort of negligent infliction of mental distress. *Rodrigues v. State,* 52 Haw. 156, 173–74, 472 P.2d 509, 520 (1970). A duty exists to refrain from the negligent infliction of serious mental distress. 52 Haw. at 174, 472 P.2d at 520. Serious mental distress "may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." 52 Haw. at 173, 472 P.2d at 520. The duty is

owed only with respect to those risks and hazards whose likelihood made the conduct unreasonably dangerous. *Id.*

Plaintiff has submitted no evidence of serious mental distress, and therefore this Court GRANTS summary judgment on the negligent infliction of emotional distress claim.

### 4. Negligent Employment and Supervision

 Plaintiff has brought causes of action against Napili Ridge for the negligent employment and supervision of Firestine. These causes of action are based on Napili Ridge's primary liability; they are not based on the derivative liability of Firestine. Hawaii recognizes both a cause of action for negligent employment, *Janssen v. American Hawaii Cruises, Inc.*, 69 Haw. 31, 731 P.2d 163 (1987), and one for negligent supervision, *Abraham v. S.E. Onorato Garages*, 50 Haw. 628, 633–34, 446 P.2d 821, 826 (1968). As to the negligent employment claim, the Hawaii Supreme Court has found that "[t]he existence of a duty under a negligent hiring theory depends upon foreseeability, that is, 'whether the risk of harm from the dangerous employee to a person such as the plaintiff was reasonably foreseeable as a result of the employment.'" *Janssen*, 69 Haw. at 34, 731 P.2d at 166. Likewise, the Hawaii Supreme Court imposes a foreseeability requirement with regard to the negligent supervision claim. In *Abraham*, the Hawaii Supreme Court stated: "The relationship of employer and employee may, under certain circumstances, create a duty on the employer to control the conduct of the employee.... It is essential for liability that there be a showing by the plaintiff that the employer knew or should have known of the necessity and opportunity for exercising such control." 50 Haw. at 633–34, 446 P.2d at 826 (citations omitted).

Assuming *arguendo* that Plaintiff had presented evidence that Firestine somehow posed a threat to her,[8] Plaintiff has presented no evidence that Napili Ridge knew or had any reason to know that Firestine posed such a threat. Hence, the Court GRANTS summary judgment in favor of Napili Ridge on both the negligent employment and supervision causes of action.

---

8. The Court finds it highly unlikely that Plaintiff could make such a showing, as it has already found that Firestine had probable cause to arrest her.